UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DAMEION DOUGLAS,                                    Case No. 6:22-cv-01004-AA

        Plaintiff,                              **OPINION AND ORDER**

    v.

ASSIS. ADMIN. OF REL. SERV. STUART
YOUNG; ADMIN. OF REL. SERV. DARYL
BORELLO; CHAPLAIN THOMPSON;
CHAPLAIN STAHLNECKER;
CORRECTIONAL OFFICER STEWART;
SERGEANT WHITNEY; CAPTAIN
SUNDQUIST,

        Defendants.

_____

AIKEN, District Judge.

      Plaintiff, a self-represented adult in custody (AIC) at the Oregon State Penitentiary

(OSP), filed suit under 42 U.S.C. § 1983 and alleged that Defendant Sundquist retaliated against

him for engaging in protected conduct in violation of Plaintiff's rights under the First

**1 - OPINION AND ORDER**

Amendment.[1] Defendant Sundquist now moves for summary judgment on grounds that the facts of record do not support Plaintiff's claim. For the reasons explained below, Plaintiff fails to raise a genuine issue of material fact to defeat summary judgment, and the motion is granted.

## BACKGROUND

On March 7, 2022, Plaintiff filed a grievance against OSP Sergeant Whitney after he confiscated a mirror from Plaintiff's cell. Sundquist Decl. ¶ 9 & Ex. 1 at 1-2 (ECF No. 38). Sergeant Whitney responded to Plaintiff's grievance and explained that he mistakenly believed mirrors must be confiscated from AICs and stated that Plaintiff's mirror would be returned to him. *Id.* Ex. 1 at 3. Plaintiff appealed the response and accused Sergeant Whitney of lying and discriminating against him. *Id.* Ex. 1 at 4; Pl.'s Response to Mot. Summ. J. at 3 (ECF No. 57). Plaintiff explained that "it has been over 6 weeks since I had a mirror and [due to] the fact that Whitney lied, didn't follow policy by not writing a confiscation form, and undermined [another officer's] authority I'm not willing to just accept a new mirror [and] something else has to be attached to deter future similar conduct." Sundquist Decl. Ex. 1 at 4.

While Plaintiff's initial grievance appeal was pending, Defendant Sundquist, one of Sergeant Whitney's supervisors, called Plaintiff into his office. *Id.* ¶¶ 4-6. During their thirty-minute conversation, Plaintiff and Defendant Sundquist "went back and forth, and Sundquist surprisingly told him he spoke with Whitney and agreed with him that there was a misunderstanding and he believed that Whitney must have misunderstood something and that there wasn't any discrimination." Pl's Response to Mot. Summ. J. at 3. Plaintiff was not satisfied with Defendant Sundquist's response and stated that he intended to file a second appeal *Id.*

---

[1] Plaintiff's claims against the other named Defendants were dismissed in a previous Order.

Plaintiff alleges that, after stating his intent to file a second grievance appeal against Sergeant Whitney, Defendant Sundquist asked Plaintiff how long he had been at OSP. Defendant Sundquist also allegedly said that AICs "had it good" at OSP compared to other institutions and at they could be transferred at any time. Sec. Am. Compl. at 4; Pl's Response to Mot. Summ. J. at 3. Plaintiff replied, "That's why guys try to be on their best behavior," and Defendant Sundquist reiterated that AICs can be transferred at any time. *Id.*

Plaintiff subsequently filed a second grievance appeal against Sergeant Whitney and another grievance against Defendant Sundquist, complaining that Defendant Sundquist threatened Plaintiff with a retaliatory transfer for filing grievances. Sundquist Decl. ¶¶ 9-10 & Ex. 1 at 6, Ex. 2. Plaintiff was not disciplined or transferred to another institution after he filed these additional grievances. *Id.* ¶ 11.

## <u>DISCUSSION</u>

Plaintiff alleges that Defendant Sundquist retaliated against him in violation of his rights under the First Amendment by issuing an implicit threat that Plaintiff could be transferred to another institution if he continued to file grievances.

Defendant Sundquist moves for summary judgment on grounds that Plaintiff cannot succeed on the merits and Defendant Sundquist is entitled to qualified immunity. To prevail, Defendant Sundquist must show that "there is no genuine dispute as to any material fact" and he is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the moving party, Defendant Sundquist bears the burden of establishing the absence of any genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the burden shifts to Plaintiff to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

**3 - OPINION AND ORDER**

The Court must "draw all reasonable inferences" in favor of Plaintiff, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations and quotation marks omitted).

Plaintiff argues that Defendant Sundquist's statements that AICs could be transferred from OSP "at any time" was an implicit threat directed at Plaintiff because of his grievances against Sergeant Whitney and constituted unlawful retaliation against him for engaging in protected conduct.

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities and as well as a right of meaningful access to the courts." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). Accordingly, retaliation against AICs for exercising their First Amendment right to file grievances "is itself a constitutional violation." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). To state a viable claim of First Amendment retaliation, Plaintiff must establish five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

With respect to the fourth element, Plaintiff must show either a "chilling effect" or "some other harm." *Brodheim,* 584 F.3d at 1269. An "objective standard governs the chilling inquiry; a

**4 - OPINION AND ORDER**

plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action would chill *or* silence a person of ordinary firmness from future First Amendment activities." *Id.* at 1271 (quoting *Rhodes*, 408 F.3d at 568-69). While "the mere *threat* of harm can be an adverse action" and "have a chilling effect," the ultimate question is whether the statements plausibly "intimated that some form of punishment or adverse regulatory action would follow a failure to comply." *Id.* at 1270.

Defendant Sundquist maintains that he spoke to Plaintiff in an attempt to resolve Plaintiff's grievance by explaining that Sergeant Whitney was allowed to search Plaintiff's cell and mistakenly believed he was required to confiscate Plaintiff's mirror. Sundquist Decl. ¶ 4-5. Defendant Sundquist disputes the alleged comments attributed to him and denies that he threatened Plaintiff with transfer in retaliation for Plaintiff's grievances. *Id.* ¶¶ 7-8. Despite this factual dispute, Defendant Sundquist argues that summary judgment is appropriate because his alleged comments, if accepted as true, served legitimate correctional goals and were nothing more than vague, non-impending statements that cannot sustain a claim of retaliation.

Viewing the evidence in the light most favorable to Plaintiff, he fails to establish that two vague comments about AIC transfers during a thirty-minute conversation constituted an adverse action that would "chill" a reasonable person from exercising First Amendment rights. It is undisputed that Defendant Sundquist did not issue a direct or explicit threat of transfer and did not impliedly suggest that Plaintiff would be transferred because of his grievances. Rather, Defendant Sundquist stated only that AICs "can be transferred at any time," and this ambiguous comment lacked specificity and did not reasonably suggest that Plaintiff's transfer to another facility was impending or "would follow" the future exercise of protected activity. *Rhodes*, 408 F.3d at 568-69; *Wray v. Garton*, 2020 WL 1330234, at *4 (D. Or. Mar. 2, 2020), *report and*

**5 - OPINION AND ORDER**

*recommendation adopted*, 2020 WL 1325354 (D. Or. Mar. 18, 2020) ("The Court finds that no reasonable jury could conclude that Deputy Smith's vague threat of future rule violations, which never materialized, would chill or silence a person of ordinary firmness from pursuing a grievance."); *see also Hardy v. Adams,* 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) (finding that "the vagueness of the alleged threat precludes any finding that a person of ordinary firmness would be deterred from engaging in protected conduct"); *Woodward v. Afify*, 2018 WL 9875253, at *11 (W.D.N.Y. Sept. 28, 2018), *report and recommendation adopted*, 2019 WL 5394217 (W.D.N.Y. Oct. 22, 2019) (finding an official's statement that "a lot of problems could come" to the plaintiff did "not rise to the level of adverse actions sufficient to support a First Amendment retaliation claim as a matter of law"); *Quezada v. Roy*, 2015 WL 5970355, at *23 (S.D.N.Y. Oct. 13, 2015) (dismissing First Amendment retaliation claims based on prison officials' verbal harassment and vague threats).

Indeed, after Defendant Sundquist's comments, Plaintiff filed additional grievances, initiated this federal court action, fully participated in litigation before this Court, and was never transferred to another facility. Plaintiff has not alleged "other harm" aside from being "shocked" by Defendant Sundquist's statements, which is minimal harm at best. Thus, Plaintiff fails to show that a prison of ordinary firmness would be deterred from future protected conduct as a result of Defendant Sundquist's alleged statements.

At minimum, Defendant Sundquist is entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 580 U.S. 73, 78-79 (2017) (internal quotation marks and citation omitted) (per curiam). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing

**6 - OPINION AND ORDER**

precedent" and "must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know." *District of Columbia v. Wesby*, 538 U.S. 48, 63 (2018) (citations omitted).

Plaintiff cites no controlling precedent clearly establishing that Defendant Sundquist's vague and non-impending statements constituted an actionable threat of adverse action in retaliation for engaging in protected conduct. Accordingly, summary judgment is appropriate on grounds of qualified immunity.

## **<u>CONCLUSION</u>**

Defendant's Motion for Summary Judgment (ECF No. 37) is GRANTED and this action is DISMISSED. Plaintiff's Motion for Order (ECF No. 59) is DENIED, as Plaintiff produces no admissible evidence that Defendant Sundquist answered interrogatories in bad faith.

IT IS SO ORDERED.

DATED this  29th   day of July, 2025.


        /s/Ann Aiken
        ANN AIKEN
    United States District Judge

**7 - OPINION AND ORDER**